WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Naomi Freeman, | No. CV-16-08249-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Naomi Irene Freeman's appeal of the Social Security Administration's decision to deny disability benefits and supplemental security income. (Doc. 1). For the reasons set forth below, this Court affirms the decision.

**BACKGROUND**

On December 16, 2013, Ms. Freeman filed an application for disability benefits as well as an application for supplemental security income. (Tr. 19). Both applications alleged a disability onset date of June 25, 2013. *Id.* Both claims were initially denied on March 6, 2014, and they were denied again upon reconsideration on July 9, 2014. *Id.* Ms. Freeman then filed a written request for a hearing, and she testified before Administrative Law Judge ("ALJ") Thomas Cheffins through a video hearing on August 12, 2014. *Id.* On July 14, 2015 the ALJ issued a decision concluding that Ms. Freeman was not disabled. (Tr. 30).

In evaluating whether Ms. Freeman was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 20–21). At step one, the ALJ found that Ms. Freeman had not engaged in substantial gainful activity since June 25, 2013, the alleged onset date.[2] (Tr. 21–22). At step two, the ALJ determined that Ms. Freeman suffered from the following severe impairments: degenerative disc disease of the lumbar spine with back pain, mild bilateral hip chondrosis, and obesity. (Tr. 22). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. *Id.*

At that point, the ALJ reached step four and made a determination of Ms. Freeman's residual functional capacity ("RFC"),[3] concluding that Ms. Freeman could "perform light work" as defined in 20 C.F.R. § 404.1567(b), with the exception that "she can occasionally climb, balance, stoop, crouch, kneel, and crawl." (Tr. 23). He also

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] Ms. Freeman did work after the alleged onset date, but the parties concede that her earnings did not rise to the level of substantial activity. (Tr. 21).

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

- 2 -

found that Ms. Freeman's RFC did not prohibit her from performing her past relevant work as a medical assistant, bank teller, and Certified Nursing Assistant so long as she was limited to light work as a CNA. (Tr. 29). In making these findings, the ALJ discounted the opinion of Ms. Freeman's treating physician, Dr. Bagley, and relied heavily upon the opinion of an examining physician, Dr. Maric. (Tr. 26, 27). The ALJ also declined to accept the totality of Ms. Freeman's subjective symptom testimony. (Tr. 24).

The Appeals Council declined to review the decision. (Tr. 1–4). Ms. Freeman filed the complaint underlying this action on October 31, 2016, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1).

**DISCUSSION**

**I.    Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Freeman argues the ALJ (a) erroneously rejected Dr. Bagley's medical opinion, (b) wrongfully assigned significant weight to Dr. Maric's opinion, and (c) did not discredit Ms. Freeman's testimony with clear and convincing evidence. (Doc. 12).

### A. The ALJ Justifiably Rejected Dr. Bagley's Opinion

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). However, an "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir.1986)).

If the treating physician's opinion is contradicted by another doctor, the ALJ still cannot reject the treating physician's opinion unless she provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted). "Sheer disbelief is no substitute for substantial evidence," and thus the ALJ must specify what evidence she is relying on to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. Also, the ALJ may reject a treating physician's opinion if it is primarily based on a claimant's properly discounted self-reports. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ may cite to diagnostic test results, contrary reports from examining physicians, and "testimony from the claimant that conflicted with her

treating physician's opinion" to provide specific and legitimate reasons for rejecting the opinion of a treating physician. *Benecke*, 379 F.3d at 594.

The ALJ rejected the medical opinion of Dr. Bagley, Ms. Freeman's treating physician, because it was conclusory, internally inconsistent, inconsistent with the objective medical evidence of the record at large, and contradicted by both an examining physician and the reviewing physician for the state agency. (Tr. 27). The ALJ also asserted that Dr. Bagley's opinions fell beyond the scope of his area of specialty, and this further discredited his opinions. *Id*.

The ALJ properly discredited Dr. Bagley in part because his medical opinions were conclusory. As the ALJ noted, Dr. Bagley opined that Ms. Freeman could work in October 2013. (Tr. 27, 422, 456, 464). In January 2014, Dr. Bagley opined that Ms. Freeman could resume working following a two week break. (Tr. 27, 452). It was not until August 2014, more than a year after the alleged onset date of disability, that Dr. Bagley determined that Ms. Freeman could not work at all. (Tr. 27, 499). The ALJ's citations to the record indicate that Dr. Bagley never explained what led to his change in opinion, and, in fact, Dr. Bagley did not reference any additional medical evidence beyond Ms. Freeman's subjective reporting to support his opinion. (Tr. 27, 499). In December 2014, Dr. Bagley repeated his opinion that she could not work and noted that she had been unable to "get back to Dr. Masters for any more injections," but he again failed to support this opinion with any medical evidence supporting his decision. (Tr. 27, 501). To the extent that Dr. Bagley relied on Ms. Freeman's subjective reports, the ALJ properly discounted her subjective testimony, as discussed below. *Infra* II.C at 9–14. Because an ALJ is not obligated to accept a treating physician's testimony which is brief and conclusionary, *Magallanes*, 881 F.2d at 751, the ALJ reasonably discredited Dr. Bagley on this point.

Likewise, the ALJ did not err in considering Dr. Bagley's abrupt change of opinion as internally inconsistent with his treatment notes. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (affirming an ALJ's decision to discredit

the findings of a treating psychologist due to inconsistencies between his opinion and his treatment notes). In making this determination, the ALJ cited to the medical record, indicating that in October 2013, Dr. Bagley determined that Ms. Freeman could work as long as she remained on light duty, which he defined as "no lifting over 10 pounds, no bending or twisting, no standing or walking greater than 1 hour at a time." (Tr. 27, 422). In January 2014, Dr. Bagley noted that most of her pain was mechanical, resulting from a lumbar sprain, and he encouraged her to do exercise daily and be more active. (Tr. 461). Then, in August 2014, he determined that Ms. Freeman could not work due to her medical conditions.

Next, the ALJ reasonably concluded that the objective medical evidence did not support Dr. Bagley's findings. An ALJ may properly discredit a treating physician's opinion where it is "unsupported by the record as a whole, or by objective medical findings." *Batson*, 359 F.3d 1195 (internal citation omitted). The ALJ provided a detailed summary of Ms. Freeman's medical record prior to discussing Dr. Bagley's findings. In doing so, the ALJ noted that MRIs taken throughout the period of disability indicated that Ms. Freeman's "limitations are not disabling." (Tr. 24). An MRI of Ms. Freeman's lumbar spine in July 2013 indicated that she had "mild bilateral foraminal narrowing at L5-S1, and an otherwise unremarkable study." (Tr. 24, 378). In October 2013, an MRI showed no findings other than mild right hip joint chondrosis. (Tr. 415–16). Dr. Bagley stated that "[h]er MRI really was not remarkable." (Tr. 465). In January 2014, an MRI of Ms. Freeman's hips and pelvis was "unremarkable." (Tr. 24, 477). In October 2014, a full body scan showed only possible osteoarthritis. (Tr. 24, 507). The ALJ explained that while these scans demonstrate there may be "some abnormality of the claimant's lumbar spine and hips," there is no evidence of a condition that would cause the degree of limitations alleged by both Ms. Freeman and Dr. Bagley. (Tr. 24). Considering such objective medical evidence, and the degree to which it is inconsistent with a treating physician's findings, is not error. *Batson*, 359 F.3d 1195.

The ALJ did not err by discrediting Dr. Bagley due to the contradictions between

his findings and the other physicians of the record. *See Batson.*, 359 F.3d at 1195 ("When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."). Dr. Maric examined Ms. Freeman and determined that she was capable of working. (Tr. 369–70). While the contradiction between the doctors' opinions cannot form the sole basis to discount Dr. Bagley's opinion, as he is Ms. Freeman's treating physician, it may be one factor to consider among others.

Ms. Freeman asserts that the ALJ misunderstood the record. She claims that Dr. Bagley's initial findings in October 2013 actually supported a finding of disability under the regulations as sedentary work, the category of work with the least amount of physical exertion, which requires that "an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday." S.S.R. 96–9p. Ms. Freeman's argument misinterprets Dr. Bagley's definition of light work. Dr. Bagley instructed Ms. Freeman not to walk for more than one hour *at a time*. (Tr. 422). This is not the equivalent of saying that Ms. Freeman can only walk for a total of one hour throughout the entirety of a work day. Therefore, the ALJ did not err in considering this inconsistency as a specific and legitimate reason to discredit Dr. Bagley's findings.

However, the ALJ did err to the extent that he claimed that Dr. Bagley was Ms. Freeman's primary care physician,[4] and that Dr. Bagley could be discredited because his "opinions appear to rest at least in part of an assessment of an impairment outside his area of expertise." (Tr. 27). Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard after determining that two of the ALJ's reasons supporting his adverse credibility finding were invalid). Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was

---

[4] Although Ms. Freeman "primarily" met with Dr. Bagley to address her back pain, Dr. McCarver is her primary care physician. Notwithstanding this fact, in the disability hearing, the ALJ asked Ms. Freeman, "[Is] Dr. Bagley is your primary care physician?" Ms. Freeman responded, "Yes." (Tr. 69). This may serve as the basis for the ALJ's confusion and error.

- 7 -

harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). However, "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.* As discussed above, the ALJ provided a multitude of specific and legitimate reasons for discounting Dr. Bagley's opinion. *Benecke*, 379 F.3d at 594. Therefore, any error resulting from the ALJ's mischaracterization of Dr. Bagley as Ms. Freeman's primary care physician is harmless.

### B. The ALJ Justifiably Gave Dr. Maric's Opinion Significant Weight

When the ALJ finds the treating physician's opinion to be unreliable, the ALJ considers a number of factors to determine the weight given to another medical opinion. 20 C.F.R. 404.1527. These factors include whether the doctor examined the claimant, whether the medical record corroborates the opinion, and any other legitimate issues brought by the claimant. *Id.* As noted, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). An ALJ should consider the opinion of an examining doctor, even if the examination considers a Workers' Compensation claim. *Hunter v. Astrue*, 874 F.Supp.2d 902, 910 n.9 (C.D. Cal 2012) (citing SSR 96–8p, 1996 WL 374184, at *7 n.8). In those circumstances, the ALJ should consider the separate contexts of Workers' Compensation claims and Social Security claims. *Knorr v. Berryhill*, 2017 WL 2408123 at *10 (C.D. Cal June 2, 2017).

Dr. Maric examined Ms. Freeman on October 8, 2013, four months after the alleged disability onset date. (Tr. 366). The examination considered Ms. Freeman's Workers' Compensation claim and asked whether Ms. Freeman could return to pre-accident employment with or without restrictions. (Tr. 369–70). Dr. Maric conducted a lumbar spine exam, noting that Ms. Freeman had a normal range of motion, moved comfortably without difficulty or discomfort, but that Ms. Freeman did complain of pain during the exam. Dr. Maric also reviewed Ms. Freeman's x-rays from June and an MRI scan from July, noting some mild and minimal abnormalities, but nothing significant.

(Tr. 369). Ultimately, Dr. Maric opined that "Ms. Freeman does not have a specific diagnosable condition" and "does not have objective findings that substantiate her complaints." (Tr. 370). He opined that "she is capable of returning to her regular work duties at this time." *Id*.

The ALJ gave Dr. Maric's Medical opinion "great weight" in determining Ms. Freeman's disability, (Tr. 26), and this decision was rational. Dr. Maric performed a physical examination and a lumbar spine examination in person and recorded Ms. Freeman's performance. Dr. Maric's opinion that the objective findings are unremarkable is consistent with Dr. McCarver's, Dr. Booya's, and Dr. Rosatti's opinion of her MRI. (Tr. 341–60; 476–79). Although Dr. Maric's examination took place within the context of a Workers' Compensation claim, his examination considered questions relevant to the Social Security claim, such as whether Ms. Freeman could return to her previous work.

Lastly, the fact that the ALJ incorrectly referred to Dr. Maric as a psychologist does not sufficiently conflict with the ALJ's judgment to afford Dr. Maric's opinion significant weight.

For all of the above stated reasons, the ALJ reasonably granted significant weight to Dr. Maric's examining opinion.

### C. The ALJ Justifiably Limited His Acceptance of Ms. Freeman's Subjective Complaints

An ALJ is not required "to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [social security regulations]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, an ALJ follows a two-step process to determine the credibility of a claimant's testimony of subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1035–36 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en

banc) (internal quotation marks omitted)). Second, absent evidence of malingering, the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. To determine whether the subjective claims are credible, an ALJ may consider objective medical evidence, prescribed treatments, consistency with daily activities, and other various factors. 20 C.F.R. § 404.1529(c).

The ALJ determined that Ms. Freeman's medical history could reasonably cause the alleged symptoms, but he rejected Ms. Freeman's testimony of the severity of her symptoms. That is, the ALJ did not discredit Ms. Freeman's testimony that she experienced pain. In fact, he found that her condition impacted her ability to work and lasted for a period longer than twelve months. (Tr. 22). But, the ALJ did discredit her testimony that the pain was too severe to be compatible with light work. *Id.* .

The ALJ provided the following reasons for discrediting Ms. Freeman's testimony: (1) objective medical evidence did not support disabling pain; (2) conservative treatment did not support disabling pain; (3) Ms. Freeman voluntarily stopped medical treatment; and (4) Ms. Freeman's daily activities are inconsistent with disabling pain.

          1.        Objective Medical Evidence

An ALJ may consider lack of objective medical evidence in the credibility analysis, but it cannot form the sole basis for discounting subjective testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Trevizo v. Berryhill*, No. 15-16277, 2017 WL 4053751, at *12, n.10 (9th Cir. Sept. 14, 2017).

The ALJ noted that the MRIs and x-rays were "unremarkable," and found that although the objective medical evidence is "consistent with some abnormality of the claimant's lumbar spine and hips, there is no evidence of any nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged." (Tr. 24). This assessment is reasonable. Multiple doctors, including her primary care physician and other treating and examining physicians, reviewed Ms. Freeman's MRIs and x-rays and noted that they did not show

significant disorders. (Tr. 341–60; 369–70; 476–79). Although this reason by itself is not alone sufficient to discredit Ms. Freeman's testimony, the ALJ did not err in considering it as part of his evaluation.

## 2. Failure to Follow Prescribed Treatment

When evaluating a claimant's testimony about severity of pain, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ noted that Ms. Freeman saw improvement from treatment except when she voluntarily stopped taking medications or failed to attend physical therapy. (Tr. 25). The record corroborates the ALJ's observation in this respect. In April 2015, Ms. Freeman admitted that she rarely used a tens unit that had been prescribed for treating her back pain. (Tr. 554). Ms. Freeman missed numerous physical therapy appointments, and although a separate illness explained a couple of absences, the other missed appointments were not explained. (Tr. 554). Despite instructions to continue taking pain medications, she experienced a relapse when she took herself off medication. (Tr. 345, 394). At least once, she stopped doing home exercises without reason. (Tr. 542). The record does not indicate that Ms. Freeman failed to take treatment due to inability to pay or because of an adverse reaction to medication or therapy. Given these findings, the ALJ's conclusion that Ms. Freeman failed to follow a prescribed course of treatment is reasonable.

## 3. Daily Activities

Courts have "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014). A claimant need

not be completely incapacitated to receive disability benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Even if the claimant's daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Ms. Freeman's reports concerning her daily activities are inconsistent, and are therefore difficult to ascertain. For example, in the January 2014 disability questionnaire, Ms. Freeman claimed that she washed dishes three times per week; swept the kitchen and her bathroom once per week; and did two loads of laundry every week with help from her physically and mentally disabled mother. (Tr. 256-57). Yet, three months later in a March 2014 appeal, Ms. Freeman indicated that her condition had not changed, but alleged that she was in pain all day; could not sit for more than one hour at a time; could not stand for more than ten minutes; could not climb more than a few steps without being in extreme pain; and could only walk the length of the grocery store one and a half times. (Tr. 268).

Ms. Freeman's reports to her physical therapists are also complicated. She once worked for three days with patients as a nursing assistant, and by the third day, she was in a lot of pain. (Tr. 400). Ms. Freeman told her physical therapist that cooking dinner caused pain, (Tr. 376), doing the dishes aggravated her symptoms, (Tr. 379), and activities around the home resulted in more back pain, (Tr. 382). Conversely, Ms. Freeman noted that grocery shopping, washing dishes, vacuuming, and driving cause pain, but that she deals with it. (Tr. 25, 554). She planted saplings and shoveled dirt. (Tr. 26, 67, 554). She stated that a period of inactivity made things worse. (Tr. 550). She once noted that she worked and "did better standing up rather than sitting down[,]"

and felt less painful than normal the following day. (Tr. 398). In addition to Ms. Freeman's reports to her physical therapists, the ALJ considered her work history during the period of alleged disability, and although it did not constitute disqualifying substantial gainful activity, the work history indicated that Ms. Freeman's daily activities were "somewhat greater than the claimant has generally reported." (Tr. 29, 227–32).

Considering these varying reports, the ALJ reasonably determined that Ms. Freeman's daily activities are consistent with some physical impairment, but inconsistent with totally disabling pain. (Tr. 26). To corroborate this opinion, the ALJ also referenced doctors' treatments notes to demonstrate that her daily activities are consistent with the ability to perform light work. (Tr. 25). On June 25, 2013, the alleged onset date of disability, Dr. Maric noted that she was in "no apparent distress . . . sat comfortably during the evaluation . . . ambulated . . . walked . . . got up and down off the exam table without difficulty." (Tr. 368). After the exam, "she was observed to sit up easily without any apparent restriction or discomfort." (Tr. 369). For the next few months, Ms. Freeman traveled to meet with her primary physician once per week, and each time he noted that she was in "no acute distress." (Tr. 335, 341, 343, 345, 347, 349, 352, 356, 359). On March 12, 2015, Dr. Masters noted that Ms. Freeman "walks regularly." (Tr. 529). Ms. Freeman's daily activities certainly support the conclusion that she is unable to work in an active job, but her activities conflict with her claim that she is unable to stand for ten minutes or take a few steps before experiencing excruciating pain. Therefore, the ALJ was reasonable when he discredited Ms. Freeman's testimony and concluded that she could perform light work with some additional limitations.

4. Conservative Medical Treatment

Conservative treatment may discredit a claimant's testimony of severe pain. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007), but the ALJ must also show that additional and more aggressive treatments are available. *See Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010).

The ALJ noted that Ms. Freeman's treatment was conservative, and she did not receive "the type of medical treatment one would expect for a totally disabled individual." (Tr. 24). However, the ALJ did not adequately address separate treatments for Ms. Freeman. He cursorily stated that she received "routine medication, occasional injections, and infrequent participation with physical therapy. It would seem that someone with a condition as severe as is alleged by the claimant would seek more frequent medical care." (Tr. 25). The ALJ erred when discrediting Ms. Freeman's testimony for conservative treatment because he did not discuss the availability of separate, more aggressive treatment.

As noted, when an ALJ's decision has an error, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Because the ALJ provided three reasonable reasons for discrediting Ms. Freeman's testimony, his error to discredit her for receiving conservative treatment is harmless.

## CONCLUSION

The ALJ did not commit reversible error in denying Freeman's application for benefits, and the decision is affirmed.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 10th day of October, 2017.

_____
Honorable G. Murray Snow
United States District Judge